**In the Matter of Establishment Inspection of KULP FOUNDRY, INC.**

**Appeal of KULP FOUNDRY, INC.**
**in 81–2450.**

**Appeal of SECRETARY OF LABOR**
**in 81–2451.**

**Nos. 81–2450, 81–2451.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 13, 1982.
Decided Oct. 28, 1982.

Robert D. Moran (argued), Vorys, Sater, Seymour & Pease, Washington, D.C., for Kulp Foundry.

Daniel J. Mick (argued), T. Timothy Ryan, Jr., Sol. of Labor, Frank A. White, Associate Sol. for OSHA, Dennis K. Kade, Counsel for Appellate Litigation, Andrea C. Casson, Charles I. Hadden, Thomas L. Holzman, Randy Rabinowitz, Attys., U.S. Dept. of Labor, Washington, D.C., Marshall H. Harris, Regional Sol., Philadelphia, Pa., for Secretary of Labor.

Before ADAMS, HUNTER and BECKER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

### INTRODUCTION

On July 10, 1981 Kulp Foundry, Inc. was held in civil contempt by the United States District Court for the Middle District of Pennsylvania for its failure to honor an Occupational Safety and Health Administration ("OSHA") inspection warrant. The district court issued its contempt order after quashing and severing as overbroad that portion of the warrant which authorized the Secretary of Labor to inspect documents at the Kulp plant. The district court held that the quashed part of the warrant provided for inspection power beyond the Secretary's statutory authority under section 8(a) of the Occupational Safety and Health Act, 29 U.S.C. §§ 651–678 (1976). At No. 81–2450 Kulp appeals from the district court's order holding it in contempt and from the district court's denial of its motion to quash the warrant in its entirety. At No. 81–2451 the Secretary of Labor appeals from the district court's order quashing and severing that part of the warrant authorizing the inspection of documents. We dismiss Kulp's appeal as moot and affirm the district court's order holding that the Secretary is without statutory authority to inspect documents pursuant to a section 8(a) search warrant.

### FACTS

On April 16, 1980 the Wilkes-Barre OSHA Area Office received a written complaint alleging that employees at Kulp Foundry's East Stroudsberg plant were exposed to "high levels of dust."[1] The complaint alleged that the dust problems were the result of a damaged and inoperative vacuum system on the plant floor. Based on its evaluation of the complaint, see 29 C.F.R. § 1903.11 (1981), OSHA decided to perform an inspection of the plant site. On May 20, 1980 an OSHA industrial hygienist visited the plant but Kulp officials refused to permit his entry.

On November 14, 1980 OSHA made an *ex parte* application to United States Magistrate Raymond J. Durkin for an inspection warrant based on the previously received complaint. The application sought inspection authority extending to all foundry operations where silica was present, to health hazards in plain view, and to conditions brought to the inspector's attention during the course of the inspection. The application requested that the inspection include "all pertinent conditions, structures, machines, apparatus, devices, equipment, materials and all other things therein (including records, files, papers, processes, controls and facilities) bearing on whether this employer is complying with the Occupational Safety and Health standard for exposure to silica." App. at 15. In addition OSHA requested authorization to employ the attachment of personal samplers to employees and to engage in private questioning of employees at the worksite.

The magistrate determined that probable cause existed and issued the requested warrant.[2] On November 17, 18, and 19, 1980 an OSHA compliance officer attempted to execute the warrant, but the "inspection was terminated due to the inability to agree on the meaning of the warrant and the terms of the inspection." App. at 23.[3]

### PROCEDURAL HISTORY

On April 6, 1981 the Secretary of Labor filed a Petition for Adjudication of Civil Contempt in the Middle District of Pennsylvania alleging that Kulp Foundry was in contempt because of its refusal to allow

---

1. The complaint did not specify what "dust" was, but indicated that it was a powder "much like flour" used in the process of making molds. In its warrant application, OSHA argued that the "dust" referred to in the complaint was silica dust, a type found in grey iron foundries such as Kulp's East Stroudsberg facility.

2. The warrant was issued pursuant to § 8(a) of the Act, 29 U.S.C. § 657(a) (1976).

3. According to the inspection officer's affidavit, submitted to the district court with the Secretary's Certification of Facts under 28 U.S.C. § 636 (1976 & Supp. IV 1980), the company refused to permit employee interviews on its premises and would not allow inspection of company records regarding employee exposure to silica.

execution of the warrant. App. at 36; *see* 11 C. Wright & A. Miller, *Federal Practice and Procedure,* Civil § 2960 (1973 & 1981 Supp.). In response Kulp filed a Motion to Quash Warrant, and on April 28, 1981 Judge Conaboy issued a Rule to Show Cause why Kulp's motion should not be granted. A hearing was convened on May 6, 1981.

On July 10, 1981 Judge Conaboy issued a Memorandum and Order in which he upheld the warrant in all respects except insofar as it authorized the inspection of records. The judge held that under the statute, if OSHA wanted to inspect records, it was required to seek a subpoena rather than a warrant. As to the other portions of the warrant, the court granted the Secretary's Petition for Adjudication of Civil Contempt and ordered Kulp to purge itself by permitting an inspection in accordance with the court's order. An inspection was subsequently held, but OSHA issued no citations.[4]

Kulp appealed to this court that part of the district court's order which denied Kulp's Motion to Quash and which held Kulp in civil contempt for failure to honor the warrant. Kulp claimed that no probable cause or statutory authority existed for the issuance of the warrant. Kulp also argued that the district court erred by not quashing the entire warrant when it determined that part of the warrant was overbroad and thus invalid. The Secretary filed a cross-appeal claiming that the district court erred by quashing and severing as invalid that part of the warrant which authorized the inspection of records.

Prior to briefing before this court, the Secretary moved to dismiss Kulp's appeal at No. 81–2450. The Secretary argued that because the inspection of Kulp's workplace had been completed the order of civil contempt was purged. Thus, the Secretary argued, any appeal from that order or the order denying Kulp's Motion to Quash was moot. The Secretary's motion was referred to the merits panel for consideration with these appeals.

*DISCUSSION*

### A. MOOTNESS

The Secretary of Labor asks this court to dismiss Kulp's appeal at No. 81–2450 arguing that no live controversy exists between the parties. He contends that because an inspection has taken place and no citations have been issued, Kulp's challenges to the district court's adjudication of civil contempt and refusal to quash the warrant are now moot. The Secretary further contends that Kulp stands to gain nothing if we were to reverse these portions of the district court's order. *Cf. NRDC v. U.S. EPA,* 683 F.2d 752, 759 (3d Cir. 1982) (because court could order relief which would cure an injury which would otherwise continue to exist, case is not moot).

Under Article III of the Constitution, *this court has power to adjudicate issues only when presented with an actual* "case or controversy." *United States Parole Commission v. Geraghty,* 445 U.S. 388, 395, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980). A case will be considered moot, and therefore nonjusticiable as involving no case or controversy, if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982), *quoting United States Parole Commission v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980), *quoting Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969).[5] In the instant case a reversal of the trial court's order will provide Kulp with no actual, affirmative relief. Because the warrant, as

---

**4.** The Secretary apparently determined that citations for violation of recordkeeping requirements were time barred. Because of Kulp's employees' refusal to wear personal sampling pumps, the Secretary was unable to determine Kulp's compliance with the silica standard, thereby preventing the issuance of timely citations on that basis as well.

**5.** The Supreme Court has also recognized the policy elements of the mootness doctrine. *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 756 n.8, 96 S.Ct. 1251 n.8, 47 L.Ed.2d 444 (1976).

modified by the district court, has been fully executed and no citations have been issued, the trial court's order has no on-going effect.[6] Thus under the general test for mootness, Kulp's appeal fails to present a "live" controversy for this court.[7]

This does not end our inquiry, however. Kulp argues that under our previous decisions this case should not be held moot. This court has previously identified three exceptions to the mootness doctrine which should be considered when deciding the reviewability of an appeal that is in some sense moot:

(1) whether the appellant has expeditiously taken all steps necessary to perfect the appeal and to preserve the status quo before the dispute becomes moot,

(2) whether the trial court's order will have possible collateral legal consequences, and

(3) whether the dispute is of such a nature that it is capable of repetition yet evading review.

See *Marshall v. Whittaker Corp.*, 610 F.2d 1141, 1144 (3d Cir. 1979). Because an inspection purging the contempt has taken place and because no citations have been issued, unless Kulp's situation fits into one of these three categories we are unable to reach its claims on the merits. We hold it does not.

**6.** In the instant case, any possible future citations resulting from the challenged inspection are now time barred. 29 U.S.C. § 658(c) (1976).

**7.** To contain a live issue, a case must involve "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975), *quoting North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971), *quoting Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

For the same reason that this appeal does not present a live issue, Kulp no longer has a legally cognizable interest in the result of the case. *See Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982).

First, the initial exception discussed in *Whittaker* derives from *United States v. Frumento,* 552 F.2d 534 (3d Cir. 1977) (en banc), where we held that an appeal from a judgment of civil contempt resulting in imprisonment "is not moot even though the appellant has been released from custody or has served his sentence if he has taken all possible steps to have the order of confinement promptly reviewed prior to his release." *Id.* at 537. This exception was an extension of the more traditional "capable of repetition, yet evading review" exception, discussed *infra,* and was grounded on the important personal liberty interest at stake. We do not understand this exception to extend to cases like this one where no personal liberty interest is at stake.[8] *Cf. Bagby v. Beal,* 606 F.2d 411, 414 (3d Cir. 1979) (appeal held moot despite fact that appellant filed immediate request for stay of injunction pending appeal). In any event, although Kulp filed a timely appeal in this court, it did not move in the district court or in this court for a stay of the district judge's order pending appeal. Absent such efforts Kulp's actions are not the " 'prompt, diligent and timely' action" necessary to bring it within the *Frumento* reviewability exception to the mootness doctrine. *Marshall v. Whittaker,* 610 F.2d at 1144–45.[9]

**8.** In *Whittaker* the court concluded that appellant had not satisfied the *Frumento* exception because it had not taken steps expeditiously to preserve its appeal. The court, however, did not discuss the issue of whether *Frumento* actually applied. 610 F.2d at 1144–45. We do not think the *Whittaker* court intended implicitly to expand the ambit of *Frumento,* and, of course, its discussion of that case was in no way necessary to its holding.

**9.** Kulp argues that because it entered into a "non-waiver agreement with the Secretary" before allowing an inspection to purge its civil contempt it took all the necessary steps "to preserve the status quo." *See* App. at 11. It is clear the parties are unable to enter into an agreement which gives this court subject matter jurisdiction. Furthermore we hold that the agreement entered into by Kulp and the Secretary is insufficient to fit this case within the *Frumento* exception.

■ Second, no possible collateral legal consequences flow from the district court's order. *See Pennsylvania v. Mimms,* 434 U.S. 106, 108 n. 3, 98 S.Ct. 330, 332 n. 3, 54 L.Ed.2d 331 (1977); *Sibron v. New York,* 392 U.S. 40 at 53–55, 88 S.Ct. 1889, at 1897–1898, 20 L.Ed.2d 917. As stated in *Marshall v. Whittaker,* "[a] judgment of civil contempt becomes moot after being purged because the court's order cannot be disobeyed again: . . . purging the contempt eradicates any effect of a violation." 610 F.2d at 1145. Furthermore, because OSHA has decided not to issue any citations,[10] Kulp's appeal from the district court's denial of its Motion to Quash must also be considered moot. That portion of the Judge's order "carries with it no possibility of collateral deprivation of civil rights or other [specific] legal consequences." 610 F.2d at 1145.[11]

■ Third, the claims raised by Kulp are not "capable of repetition, yet evading review." *See Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 187, 99 S.Ct. 983, 991, 59 L.Ed.2d 230 (1979); *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 125–127, 94 S.Ct. 1694, 1699–1700, 40 L.Ed.2d 1 (1974). As stated in *Marshall v. Whittaker,* Kulp's lack of prompt and diligent action in taking an appeal is also determinative of whether the case falls within this exception to the mootness doctrine. 610 F.2d at 1146. Unlike cases where the "capable of repetition, yet

evading review" exception has been applied, there is nothing inherent in the type of injury alleged by Kulp that would evade review. If Kulp had acted quickly, this action would not be "in its duration too short to be fully litigated prior to its cessation or expiration." *Illinois State Board of Elections,* 440 U.S. at 187, 99 S.Ct. at 991. As we said in *Dow Chemical Co. v. EPA,* 605 F.2d 673 (3d Cir. 1979), "[m]ost cases utilizing this approach have involved official action that by its very nature could not, or probably would not, be able to be adjudicated while fully 'live.'" *Id.* at 679 n. 12.

■ We thus hold that Kulp's appeal at No. 81–2450 is moot in that it presents no live controversy for adjudication.[12] Kulp's situation does not fall within the three exceptions to the mootness doctrine previously articulated by this court. We are thus unable to reach Kulp's claims on the merits.

The Secretary's appeal at No. 81–2451, however, does provide a live controversy in that he asks this court to overturn the district court's order quashing and severing the records inspection portion of the warrant and to remand to the district court so that further inspection may take place. We now turn to that issue.

## B. *INSPECTION OF RECORDS PURSUANT TO A WARRANT.*

The district court held that the Secretary lacked statutory authority under section

---

10. This case is distinguishable from *Marshall v. Whittaker,* where the existence of outstanding citations made Whittaker's appeal of the district court's denial of its motion to quash not constitutionally moot. 610 F.2d at 1146. (In that case, however, the court held for prudential reasons that Whittaker had to exhaust its administrative remedies before the court would consider the warrant's validity.) In the instant case, any possible future citations are now barred. *See* note 6 *supra.*

11. It is possible that issues raised by Kulp in its appeal of the district court's order denying its Motion to Quash, e.g. the existence of probable cause, are latent issues in the Secretary's appeal in No. 81–2451. Because of our disposition of that appeal, however, we need not address those issues.

12. Kulp cites *Cerro Metal Products v. Marshall,* 620 F.2d 964 (3d Cir. 1980), for authority that its appeal is not moot. *Cerro* involved an OSHA challenge to a preliminary injunction barring it from seeking *ex parte* inspection warrants. On appeal the company argued the case was moot because an inspection had already occurred pursuant to a warrant obtained by compulsory process. We held the action not to be moot because "the preliminary injunction is not limited to one inspection, and no party contends that one completed inspection removes the possibility of future attempts." *Id.* at 969; *see Cerro Metal Products v. Marshall,* 467 F.Supp. 869, 873 n.4 (E.D.Pa.1979) (decision below). Unlike the on-going effect of the preliminary injunction in *Cerro,* the inspection of Kulp's plant purging it of contempt and the absence of citations completely remove any future effect from the district court's order.

8(a) of the Act, 29 U.S.C. § 657(a) (1976), to inspect Kulp's records, files, and papers pursuant to an OSHA inspection warrant.[13] The lower court held that the only statutory authority for the inspection of documents was the Secretary's administrative subpoena power provided for in section 8(b) of the Act. 29 U.S.C. § 657(b) (1976). Accordingly, the district court quashed and severed that part of the inspection warrant authorizing inspection of documents.

In reaching its conclusion, the district court relied on the analysis in *In re Inland Steel Co.*, 492 F.Supp. 1310 (N.D.Ind.1980), the only reported decision which has addressed the issue squarely.[14] In *Inland Steel*, the district judge examined the structure and legislative history of section 8 of the Act and concluded that Congress did not intend to grant the Secretary of Labor the authority to inspect documents pursuant to a warrant.[15] The court supported its conclusion by pointing to the additional procedural safeguards provided to an employer by the administrative subpoena process. The court argued that because the general

inspection of documents is so potentially intrusive, Congress intended to provide extra procedural protections to employers. "[C]ourts should not lightly strip such protection away in the name of administrative convenience." 492 F.Supp. at 1315.

The Secretary posits several reasons why this court should not follow the reasoning in *Inland Steel*. First, he argues that section 8(a)(2) specifically authorizes the inspection of "materials" at the worksite, a term which the Secretary construes to include "notes, observations, [and] data." Second, he argues that under section 8(c)(1) an employer is required to "make available to the Secretary" those records that the Secretary requires him to keep under the Act and thus Congress could not have intended that those records could be obtained only by subpoena. Third, he argues that the *Inland Steel* reasoning is flawed because it "rests on the maxim *expressio unius est exclusio alterius*," the application of which is inappropriate to a statute in which broad rulemaking authority has been conferred by Congress.[16]

---

**13.** That same issue is presented to this court in the appeal of *Donovan v. Metal Bank of America, Inc.*, 516 F.Supp. 674 (E.D.Pa.1981), argued on the same day as the instant case. *Metal Bank of America, Inc. v. Donovan*, No. 81–2840 (3d Cir., filed Sept. 21, 1981).

**14.** The only authority cited by the Secretary in support of his claim that he has the statutory authority under § 8(a) to inspect documents is a Magistrate's Report and Recommendation in *Donovan v. Wollaston Alloys, Inc.*, No. 81–2143–M (D.Mass. Oct. 7, 1981) (magistrate), *motion to quash denied*, No. 81-2143–M (D.Mass. Feb. 12, 1982), *appeal docketed*, No. 82–1219 (1st Cir. 1982).

We have found no other decision which expressly discusses the relationship of §§ 8(a) and 8(b) and the Secretary's supposed authority generally to inspect documents pursuant to a warrant. Cases involving Labor Department investigations where warrants allowing for the inspection of medical and personnel records have been upheld have focused on whether the scope of the warrant corresponded to the probable cause on which the warrant was issued rather than the specific statutory restrictions on the Secretary's authority generally to inspect documents. *See, e.g., Marshall v. Chromolloy American Corp.*, 589 F.2d 1335 (7th Cir.), *cert. denied*, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979); *In re Peterson Builders,*

*Inc.*, 525 F.Supp. 642 (E.D.Wis.1981); *In re Pfister & Vogel Tanning Co.*, 493 F.Supp. 351 (E.D.Wis.1980); *Marshall v. Wollaston Alloys, Inc.*, 479 F.Supp. 1102 (D.Mass.1979). We do not find these cases dispositive of the issue presented here.

**15.** *Inland Steel* involved the Director of the National Institute of Occupational Safety and Health who asserted authority to conduct the underlying inspection under 29 U.S.C. §§ 669, 671 (1976). Those provisions allow the Director to perform all the functions of the Secretary of HEW (now Secretary of Health and Human Services) under § 669. Section 669(b) gives the Secretary of HHS the same authority to make inspections as is given to the Secretary of Labor under § 657. 492 F.Supp. at 1311–12.

**16.** The Secretary makes two other contentions. He argues that he has promulgated regulations which allow him, during an inspection, to review records required to be kept by law as well as other records directly related to the inspection's purpose. 29 C.F.R. § 1903.3(a) (1981). While this court gives "considerable weight" to the interpretation of a statute by the administrative agency charged with its implementation, such deference "should not be used ... as a shield for permitting agencies to extend their statutory authority beyond that delegated to them by Congress." *Dow Chemical*, 605 F.2d

Our reading of the statutory provisions, the legislative history, and the various policies behind the Act convinces us that Congress did not intend to allow the Secretary to inspect records pursuant to a warrant issued under section 8(a).[17] Congress clearly distinguished inspections of an employer's physical plant from the examination of records and documents. *See* H.R. Rep.No.91–1291, 91st Cong., 2d Sess. 22 (1970). Congress provided an express method by which the Secretary can properly effectuate his responsibilities under the Act while not compromising employers' rights to be free from excessive intrusion by the government. In addition, the language of sections 8(a) and 8(b) compels the conclusion that Congress intended them to be read together as a comprehensive inspection scheme. Section 8(a) allows the Secretary "upon presenting appropriate credentials . . . to enter without delay any factory . . . and to inspect and investigate . . . any such place of employment." Section 8(b) begins, "[i]n making his inspections and investigations under this chapter the Secretary may require the attendance and testimony of witnesses and the production of evidence under oath." We read the language of section 8(b) as granting to the Secretary a power adjunct to his section 8(a) power to inspect and investigate; to read section 8(a) as incorporating the power to obtain documents, as the Secretary would have us do, would render this adjunct power superfluous. We conclude rather that Congress intended the safeguards of a subpoena requirement to apply to the production of documents.

The Secretary also argues that the section 8(a) warrant requirement provides a sufficient safeguard against arbitrary intrusions into company records. But under the statute as Congress passed it, the Secretary was not required to obtain a warrant to inspect under section 8(a); the warrant requirement was a judicial imposition, *see Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). If the Secretary is correct in his claim that Congress authorized inspection of documents under section 8(a), then it did not provide even the limitation of an *ex parte* warrant requirement on the Secretary's authority to obtain documents. We do not think Congress could have contemplated such a result.[18]

We therefore hold that the district court was correct in quashing that part of the warrant which authorized the Secretary of Labor to inspect Kulp's records and files in

at 680–81; *see Marshall v. North American Car Co.,* 626 F.2d 320, 324 (3d Cir. 1980).

The Secretary also argues that the Supreme Court implicitly decided the issue presented here in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), when the Court rejected the Secretary's position as expressed in his regulations "that an inspection of documents of this scope may be effected without a warrant." *Id.* at 324 n.22, 98 S.Ct. at 1826 n.22. The Court, however, was making the point that, based on its reading of the Fourth Amendment, no inspection of documents of the scope contemplated by the regulation could be effected without a warrant. This was a *constitutional* determination, and at no point did the Court address the *statutory* issue of what authority Congress provided the Secretary in § 8(a). *Accord Inland Steel,* 492 F.Supp. at 1316.

17. Congress may not have explicitly compared the inspection of records pursuant to a warrant and the inspection of records pursuant to a subpoena because, under the Act as passed, Congress did not expressly require that a war-

rant be obtained for any type of inspection under § 8(a). *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 309, 98 S.Ct. 1816, 1819, 56 L.Ed.2d 305 (1978). Congress, however, clearly distinguished between the Secretary's authority to conduct a physical inspection of the workplace under § 8(a) and the additional authority to issue subpoenas under § 8(b). *See* H.R.Rep. No. 91–1291, 91st Cong., 2d Sess. 22 (1970).

18. While we do not decide the question of whether or not a subpoena is necessary to reach records that an employer is required to "make available" under § 8(c) of the Act, we note that the requirements of an administrative subpoena are (1) the inquiry must be within the authority of the agency, (2) the demand for production must not be too indefinite, and (3) the information sought must be reasonably relevant to the authorized inquiry. *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570 (3d Cir. 1980); *see United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950).

conjunction with a physical inspection of Kulp's plant.[19]

*CONCLUSION*

Because we find Kulp's appeal at No. 81–2450 to be moot, we will vacate that part of the district court's order and remand to the district court with instructions to dismiss. We will affirm that part of the district court's order in No. 81–2451 holding that records cannot be inspected pursuant to a section 8(a) search warrant.

---

**19.** Kulp argues that the district court erred in not quashing the entire warrant as invalid when it determined that part of it was overbroad. In light of our disposition of Kulp's appeal in No. 81–2450 as moot, we need not address that issue. *Cf. United States v. Christine,* 687 F.2d 749 (3d Cir. 1982) (redaction of overly broad warrant consistent with Fourth Amendment).